NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-1489

UNITED STATES OF AMERICA

v.

JOSEPH GRIESBAUM,
                Appellant

On Appeal from the United States District Court
for the Western District of Pennsylvania
D.C. Criminal No. 04-cr-0006E
(Honorable Sean J. McLaughlin)

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 14, 2006

Before: SCIRICA, *Chief Judge*, BARRY and FISHER, *Circuit Judges*

(Filed   June 21, 2006 )

OPINION OF THE COURT

SCIRICA, *Chief Judge*.

    Appellant Joseph Griesbaum appeals his judgment of conviction, claiming the District Court erroneously denied his motion to suppress evidence obtained during a search of his home. We will affirm.

I.

Because we write only for the benefit of the parties, a brief recitation of the facts will suffice. The Girard, Ohio Police Department began investigating Joseph Griesbaum in 2003 for possible sales of methamphetamine. On August 18, 2003, an undercover officer and confidential informant went to Griesbaum's home to buy methamphetamine. Griesbaum agreed to a sale, and told both men to return another time because the methamphetamine was not yet ready. They returned on September 5, 2003. Griesbaum produced a jar containing methamphetamine, smoked some, sold to both men $50.00 worth of the drug, and explained he would be using the money to produce more methamphetamine.

On December 5, 2003, after an eight-week surveillance of Griesbaum's house, two officers approached Griesbaum and told him they needed to speak privately with him. After another officer, Chief Nick VanDamia, arrived, Griesbaum invited them to his detached garage, where they told him he had sold methamphetamine to an undercover officer and confidential informant. Griesbaum admitted suspecting they were undercover officers, and recounted the incident for them.

Griesbaum alleges that Chief VanDamia told him he could either cooperate—and that cooperation would be made known to the prosecuting attorney and the sentencing judge—or be arrested immediately for the September 5th sale. Contending he believed he would escape punishment if he cooperated, Griesbaum agreed, and identified other local

drug dealers. Afterward, the officers accompanied Griesbaum to the kitchen because he wanted to tell his mother he had agreed to cooperate. She admitted her son's involvement with methamphetamine activity, and did not object to Griesbaum's cooperation.

During Griesbaum's conversation with his mother, Chief VanDamia noticed Griebsaum's five-year-old daughter in the house. VanDamia asked if there were any chemicals in the house. Griesbaum responded there were chemicals locked in a cabinet. VanDamia asked to see them. When Griesbaum refused, saying "he didn't want to get in any more trouble," VanDamia responded that the chemicals could pose a danger to his daughter, that he had enough information to get a search warrant, and that Griesbaum could be prosecuted for anything found. VanDamia advised Griesbaum that consenting to the search would be considered part of his cooperation.

Agreeing to the search, Griesbaum led the officers to his living room, where he opened the cabinet and began to inventory the methamphetamine-manufacturing supplies. Chief VanDamia called an agent from the Northwest Drug Task Force, Agent Randall Shirra, who advised VanDamia to evacuate the house and secure the perimeter until a response team could arrive to search the house and destroy the chemicals. VanDamia evacuated Griesbaum's home, handcuffed Griesbaum, and took him to the Girard Police Station where, at VanDamia's request, Griesbaum read and signed a consent to search form. VanDamia time-stamped the form to coincide with Griesbaum's oral consent.

After Shirra informed VanDamia that Griesbaum was an Erie County, Pennsylvania probationer, VanDamia arrested Griesbaum for probation violations. From that point on, Girard police officers had no further involvement with Griesbaum—they did not use him as an informant, nor did they use any of the information he gave them.

Griesbaum was indicted on seven counts for various drug violations. Griesbaum moved to suppress the evidence seized from his home, claiming he had not voluntarily consented to the search, and contending his agreement to the officers' search was granted in submission to a claim of authority. He also argued police falsely represented his consent would be viewed as evidence of his cooperation, which would eventually benefit him. The District Court denied the motion to suppress.

Griesbaum conditionally pled guilty to intentionally manufacturing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2, reserving the right to appeal the District Court's denial of his suppression motion. He accepted responsibility on the following counts: attempt to manufacture methamphetamine in violation of 21 U.S.C. § 846, possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), possession of a list I chemical with intent to manufacture methamphetamine in violation of 21 U.S.C. 841(c)(1), and possession of a list II chemical with intent to manufacture methamphetamine in violation of 21 U.S.C. § 841(c)(1). The District Court accepted his

plea, and sentenced him on January 28, 2005 to sixty months imprisonment and to three years supervised released. Griesbaum timely appealed.

## II.

We review the District Court's denial of a motion to suppress for "clear error as to the underlying facts," but we exercise "plenary review as to its legality in light of the court's properly founded facts." *United States v. Givan*, 320 F.3d 452, 458 (3d Cir. 2003) (citations omitted); *see also United States v. Mitlo*, 714 F.2d 294, 296 (3d Cir. 1983).

Griesbaum alleges the District Court committed factual error in finding his consent voluntary. The Court erred, he argues, by failing to find the officers' statements (encouraging Griesbaum's cooperation) vitiated his consent, and by failing to draw the proper conclusions from the "totality of the circumstances."

Under the clear error standard, we will uphold the District Court's factual findings unless they are "completely devoid of minimum evidentiary support displaying some hue of credibility," or "bear[ ] no rational relationship to the supportive evidentiary data." *United States v. Antoon*, 933 F.2d 200, 204 (3d Cir. 1991). On this record, there is ample evidentiary support for the District Court's findings, and those findings were rationally related to the evidence.

In its Order, the District Court found

> as a factual matter that at no time during the encounter was the defendant's cooperation obtained or consent obtained by any specific promises or implicit promises. The most that the defendant was told was that any cooperation would be revealed to the district attorney or appropriate

5

> authorities. The defendant's own statements support this conclusion. He
> testified that no police officer told him that he wouldn't have any problem.
> He had independently surmised that cooperation could prove useful to him
> based upon his knowledge of a confidential informant who had cooperated
> and apparently remained out of jail. He further testified that no officer
> informed him that his charges would be dismissed. He further testified that
> he was never promised anything in return for his cooperation.

(App. 190–91.)

Griesbaum argues he initially refused to consent to a search of his house because he wanted to avoid "get[ting] into anymore trouble" (Appellant Br. 36), and therefore the officers' representations to Griesbaum amounted to a promise that he would benefit from the cooperation.[1]

But at his suppression hearing, Griesbaum stated the officers never specifically told him he was going to be "totally off." (App. 95.) He admitted he did not "recall exactly how they said" his cooperation would help. (*Id*.) He admitted he decided to cooperate "not based on anything law enforcement ever did," but because he "figured in [his] own mind that another cooperator got off and [he] hoped that the same thing would happen to [him]." (App. 31.) These admissions offer strong support for the District

---

[1]Specifically, Griesbaum contends the officers promised him if he cooperated (1) he would not be charged with a sale of fifty dollars worth of methamphetamine, (2) he would not be arrested, (3) his cooperation would help him, (4) that cooperation would be made known to authorities, and (5) his consent to a search would be part of his cooperation. Griesbaum argues that, despite his cooperation and consent to the search, police charged him with the methamphetamine sale, arrested him, used his statements against him, never made his cooperation known to the prosecuting attorney or the sentencing court, and revoked his cooperation after the search.

6

Court's findings. Under the clear error standard those findings bear a "rational relationship" to the record.[2]

Griesbaum also argues that under *United States v. Sebetich,* 776 F.2d 412 (3d Cir. 1985), and *United States v. Molt*, 589 F.2d 1247 (3d. Cir. 1978), a police officer's misrepresentation weakens a claim of voluntary consent. Even if we believed statements made by the officers in this case were misrepresentations—and we do not—nothing in either *Sebetich* or *Molt* requires us to hold the District Court committed clear error. In *Molt,* we declined to reverse the district court's holding—under the clear error standard—that a defendant did not voluntarily consent to a search. There, we noted a misrepresentation that compels consent will weigh strongly against a finding of voluntary consent. 589 F.2d at 1251-52. But VanDamia made no misrepresentation, and no statement made by any officer was coercive. Nothing in *Molt* compels a finding of error in this case.

In *Sebetich*, we held the district court failed to make specific findings relevant to the search and seizure of a defendant who had been convicted of robbery. We noted the

---

[2]Griesbaum also claims the reason given by the officers for declining to use Griesbaum as an informant—that the officers learned, only after they surveyed the chemicals and contacted the search team, of his status as a probationer—is incredible, given the length of their investigation and their success in already gaining both valuable information and his consent for a search. But under the clear error standard, even if the officers' rationale was questionable it would not alter our holding that the District Court's findings were rationally related to the evidence. Whether the District Court *could* have come to a different conclusion is not the test.

7

troubling nature of an alleged statement by an officer seeking, from the defendant's mother, consent to a search of the defendant's home. The officer, in response to a question from the defendant's mother, allegedly said things would "go easier" on the defendant if his mother consented to the search—and never mentioned he had already obtained a warrant. 776 F.2d at 423. On the one hand, because the statement, if made, did not appear to be "well-founded," it would "militate against a finding of consent." *Id.* at 425 n.21. On the other, because the defendant's mother raised the issue, that factor "suggest[ed] her willingness." *Id.* Unlike *Sebetich*, here the District Court's findings are explicit and clear. And unlike *Sebetich*, Griesbaum himself had willingly cooperated with officers who were ignorant of his status as a probationer. Any statements made by the officers to Griesbaum in this context would seem to be "well-founded" and reasonable, unlike the possibly duplicitous action taken by the officers in *Sebetich*.

     Griesbaum also argues his consent was invalid because it was based solely on VanDamia's assertion of authority. His argument centers around VanDamia's statement that "with the information that we had and the information he had given us that he did in fact have chemicals in the house, that we could go and obtain a search warrant and search the house." (App. 52.) According to Griesbaum, VanDamia "let it be known that he could go back and get a search warrant right then, so it really didn't matter." (App. 98.) Because Griesbaum "only consented" to the search based on this "claim of authority," he claims the search was invalid.

8

Griesbaum argues the District Court either misunderstood or misapplied the operative legal standard. Citing authority from both the Supreme Court and this Court, the District Court held,

> In my view the statement by Police Chief Van Damia that a warrant could be obtained does not per se vitiate the voluntariness of the consent in this case. Neither *Molt* nor *Sebetich* so hold. Nor does the defendant seem to suggest in his papers or at argument. I believe, therefore, that the well-established totality of circumstances test here must be applied to gauge the quality of the defendant's consent in this case. . . .
> While he was informed that a search warrant could be obtained, without trying to parse this too finely, I note that he was not informed, for instance, that one would be obtained.

(App. 193–94.)

Arguing the District Court used the incorrect legal standard, Griesbaum claims VanDamia's statement implied obtaining a warrant was a foregone conclusion, making Griesbaum's consent invalid.

Although the cases Griesbaum cites articulate a clear principle—"Where there is coercion, there cannot be consent," *Bumper v. North Carolina*, 391 U.S. 543, 550 (1968)—they do not create a per se standard that controls the outcome in this case. Rather, these cases repeatedly emphasize the need to view the consent standard in the "totality of the circumstances." *See, e.g.*, *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973) ("[T]he question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances.").

9

Griesbaum also asserts error in the District Court's holding that "there was independent, overwhelming probable cause" to obtain a warrant. (App. at 195.) Griesbaum argues the effect of Chief VanDamia's allegedly coercive statements cannot be cured even if probable cause supported the issuance of a warrant.

As noted, we disagree with Griesbaum's assessment of the facts: the District Court did not commit clear error when it found Chief VanDamia's statements were not inherently coercive and did not vitiate consent. We also disagree with Griesbaum's argument that the District Court's finding contradicts established Fourth Amendment law. Citing to *Johnson v. United States*, 333 U.S. 10, 14 (1948), Griesbaum states "to view such 'consent' as voluntary and not coerced only because probable cause existed at the time undermines the protections of the Fourth Amendment and warrant issuing process." (Appellant Br. 33.) But the District Court did not deem Griesbaum's consent voluntary "only because probable cause existed at the time." The District Court's conclusions were in full accord with our observation in *Sebetich*: "*Bumper* does not establish a blanket rule that, whenever police possess an invalid search warrant or falsely claim that they can obtain one, voluntariness is necessarily vitiated; indeed *Schneckloth* mandates consideration of all the surrounding circumstances." 776 F.2d at 424. Even if the District Court found VanDamia could not actually have obtained a warrant, the District Court would still be able to assess the nature of Griesbaum's consent after examining the totality of the circumstances. We see no error here.

Griesbaum also argues that, under the totality of the circumstances, the government failed to meet its burden of proof. Griesbaum argues the misrepresentations made by officials to Griesbaum concerning the favorable consequences of consent, and Griesbaum's "submission to a claim of lawful authority," both weigh heavily against a finding of voluntary consent. He argues that his lack of a high school diploma, his minor criminal record, his belief he would not be punished if he cooperated, and his initial refusal to consent, all militate against a finding of voluntary consent.

We disagree. As we have already said, under the clear error standard, the District Court did not err in finding Griesbaum's consent was not based on any misrepresentations. Even if we were to hold otherwise, we must still assess the District Court's overall findings on consent under the clear error standard. We see no error.

In *Schneckloth*, the Supreme Court articulated some of the factors a court might take into account in determining the voluntariness of consent under the "totality of circumstances." An individual's age, his education, his intelligence, any advice given to him about his constitutional rights, and the length and character of his detention are all factors a court might weigh. *Schneckloth*, 412 U.S. at 226. Here, the District Court cited the "cordial" interaction between Griesbaum and the officers; the lack of "physical or verbal threats" and the absence of "force or psychological intimidation"; VanDamia's statement to Griesbaum that he did not have to consent; his signing of a written consent form; his age, intelligence, and experience with the criminal justice system; the lack of

misrepresentation by the officers; and the absence of any insistence that obtaining a warrant was a foregone conclusion. (App. 194.) The District Court reasonably concluded consent was voluntary based on the evidence in the record. We see no error.

III.

We will affirm the judgment of conviction and sentence.